UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| PLUMBERS AND PIPEFITTERS LOCAL 102, | ) | |
| | ) | |
| Plaintiff, | ) | 3:24-CV-00121-DCLC-JEM |
| | ) | |
| v. | ) | |
| | ) | |
| CONSOLIDATED NUCLEAR SECURITY, LLC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Motion for a Temporary Restraining Order [Doc. 4]. Plaintiff, Plumbers & Pipefitters Local 102 ("Local 102"), requests the Court issue a temporary restraining order or, alternatively, injunctive relief against Defendant, Consolidated Nuclear security, LLC ("CNS"), restraining CNS "from discharging or laying off bargaining unit members in response to the reinstatement of the three grievants" from an October 2023 arbitration hearing [Doc. 4, pg. 1]. Specifically, Local 102 requests the Court restrain CNS from terminating "any current employees," and in the event terminations have occurred at the issuance of this order, Local 102 requests the Court require CNS "to immediately reinstate the terminated employees until the conclusion of the contractual grievance and arbitration process" [*Id.*]

## I. BACKGROUND

Local 102 is a labor organization that is the exclusive bargaining agent for certain craft employees of CNS who work at Y-12 National Security Complex ("Y-12") in Oak Ridge, Tennessee [Doc. 5, pg. 1]. CNS manages and operates Y-12 pursuant to a contract with the National Nuclear Security Administration ("NNSA") [Doc. 11, pg. 2]. In addition to its

management role, CNS oversees construction of a multibillion-dollar Uranium Processing Facility ("UPF") to replace outdated buildings and facilities [*Id.*]. UPF is one of the largest construction projects in Tennessee, and CNS employees over 2,000 workers at the height of construction [*Id.*]. CNS employees UPF craft construction workers on a temporary basis [*Id.*]. Depending on project demand, CNS has laid off some workers and hired others. Local 102 and CNS are bound by a collective bargaining agreement ("CBA"), the bargained-for terms and conditions of employment are contained in the Construction Labor Agreement ("CLA") [*Id.*]. The CLA requires that CNS have "just cause" supporting the discharge of employees and that CNS may not reject any applicant referred by Local 102 unless it has proper cause to support its decision [Doc. 5, pg. 2]. The CLA also sets out a grievance procedure for how disagreements and controversies between Local 102 and CNS will be handled [*Id.*].

On May 31, 2023, following CNS's discharge of three Local 102 represented employees, Local 102 presented a grievance to CNS regarding the discharge of these employees [Doc. 5, pg. 3]. Local 102 asserts that though the parties met to discuss the grievance, CNS "undermined the process each step of the way through delay, resistance to providing even basic documents and evidence in support of its decision to the union and ultimately by summarily denying the grievance without explaining its reasoning" to Local 102 [*Id.*]. On October 24, 2023, a hearing on the dispute was held before an arbitrator [*Id.*]. On February 29, 2024, the parties received the arbitrator's "Opinion and Award" order, which found that pursuant to the CBA, the three discharged employees were eligible for re-hire six months after their termination and ordered CNS to reinstate the employees [Doc. 11, pg. 3]. CNS complied with the arbitrator's order and reinstated two of the three employees; the third employee elected not to return to work for CNS [*Id.*].

Local 102 states that it "learned from its job steward on site that in response to the reinstatement as ordered, CNS stated it would be laying off or discharging three other employees

in retaliation for [Local 102's] representation of its members" [Doc. 5, pg. 3]. CNS denies discharging any employees in response to the arbitration award and states that is has no plans to discharge any employees because of the arbitration award.

## II. LEGAL STANDARD

The Sixth Circuit has held that the peaceful resolution of labor disputes through voluntary arbitration is a fundamental policy in our national labor laws. *See Aluminum Workers Int'l Union, AFL-CIO, Loc. Union No. 215 v. Consol. Aluminum Corp.*, 696 F.2d 437, 441 (6th Cir. 1982) (citing *Textile Workers v. Lincoln Mills*, 353 U.S. 448 (1957); *Steelworkers* trilogy (*United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960); *Nolde Brothers, Inc. v. Local 358, Bakery and Confectionary Workers*, 430 U.S. 243 (1977))). And the Norris-LaGuardia Act ("the Norris-LaGuardia Act"), 29 U.S.C. §§ 101-115, severely limits federal courts' jurisdiction to intervene in labor disputes. *Id.*

The Norris-LaGardia Act provides that no federal court "shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict conformity with the provisions of this chapter…." 29 U.S.C. § 101. A labor dispute "includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C.A. § 113(c); *see Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 709 (1982) (section 113(c) "broadly defines the term "labor dispute" to include "any controversy concerning terms or conditions of employment."))

The Sixth Circuit recognizes that unions may seek injunctive relief against employers under the Norris-LaGuardia Act but requires strict adherence to "the procedural mandates sent forth in . . . the Norris-LaGuardia Act" including a finding of "irreparable harm." *Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18, Int'l Typographical Union*, 471 F.2d 872, 876 (6th Cir. 1972).

Before issuing a temporary or permanent injunction, the Norris-LaGuardia Act requires a federal court to hear

> the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—
>
> **(a)** That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;
>
> **(b)** That substantial and irreparable injury to complainant's property will follow;
>
> **(c)** That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;
>
> **(d)** That complainant has no adequate remedy at law; and
>
> **(e)** That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

29 U.S.C. § 107. A temporary restraining order may be granted without a hearing if "a substantial and irreparable injury to complainant's property will be unavoidable, such a temporary restraining order may be issued upon testimony under oath, sufficient, if sustained, to justify the court in issuing a temporary injunction upon a hearing after notice." *Id.* Also, the Norris-LaGuardia Act

provides that such a temporary restraining order "shall be in effect for no longer than five days and shall become void at the expiration of said five days." *Id.*

In *Aluminum Workers Int'l Union*, the Sixth Circuit held that irreparable harm is "injury so great that an arbitrator's award, if forthcoming, would be inadequate to fully recompense the injured party. It renders the award an empty victory, . . . and thereby undermines the integrity of the arbitral process as thoroughly as did the union's violation of the no-strike clause in *Boys Markets*." *Aluminum Workers Int'l Union.*, 696 F.2d at 443 (quotations omitted). Moreover, because it is the "very frustration or vitiation of arbitration," which "justified the narrow exception to the anti-injunction provision of the Norris-LaGuardia Act, the irreparability of the injury suffered by the union has in many cases become virtually the sole inquiry in those cases where injunctive relief is sought against an employer." *Id.* (quotations and citations omitted).

## III. DISCUSSION

Local 102 asserts that a TRO is necessary to prevent irreparable harm in two ways: 1) any discharged employees directly affected would lose wages and benefits and 2) without a TRO the effectiveness and integrity of the grievance process would be compromised [Doc. 5, pg. 5]. Plaintiff argues that CNS could "proceed with its apparent retaliatory plan at any moment" and that "the threat of such action causes harm to the union and its members by chilling their exercise of rights protected by Section 7 of the National Labor Relations Act and creating workplace strife" [*Id.*]

CNS responds that Local 102 has failed to establish irreparable harm if the Court declines to provide injunctive relief [Doc. 11, pg. 16]. CNS argues that Local 102 has failed to establish *any* injury because CNS has neither discharged any employee in retaliation to the arbitrator's award and order and nor has any plans to discharge any employees in retaliation [*Id.*]. Accordingly, Local 102's failure to establish irreparable harm is fatal to its claim for injunctive

relief [*Id.*]. CNS states that even if it had wrongfully terminated employees, Local 102 would still not be entitled to relief [Doc. 11, pg. 17], citing *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, in which the Sixth Circuit held that "the fact that an individual may lose [their] income for some extended period of time does not result in irreparable harm, as income wrongly withheld may be recovered through monetary damages in the form of back pay." *Id.* at 579 (citations omitted).

Both TROs and preliminary injunctions "are extraordinary remedies which should be granted only if the movant carries [its] burden of proving that the circumstances clearly demand it." *Barron v. PGA Tour, Inc.*, 670 F. Supp. 2d 674, 682 (W.D. Tenn. 2009) (citation omitted). Here, Plaintiff fails to establish the requisite irreparable harm because it did not show that any employees or the integrity of the grievance process would be harmed.[1] Local 102 has not put on any proof that CNS has discharged any employees or plans to discharge any employees in retaliation for having to reinstate the three employees because of the arbitrator's award. Regardless, a plaintiff's asserted harm is not irreparable if it is "fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002); Even if CNS were to wrongfully discharge employees, such employees could seek monetary damages.

Based on the foregoing, Plaintiffs have failed to demonstrate, at this juncture, the requisite irreparable harm for the issuance of a TRO or preliminary injunction. This failure is not inconsequential, because "[i]rreparable harm is an 'indispensable' requirement" for injunctive relief. *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020) (quoting

---

[1] The Court finds that it is not necessary to review the procedural mandates of section 7 of the Norris-LaGuardia Act because Local 102 fails to demonstrate it would suffer irreparable harm absent injunctive relief.

*D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326–27 (6th Cir. 2019)). Accordingly, due to the want of irreparable harm, the Court cannot grant the requested injunctive relief.

## IV. CONCLUSION

For the reasons provided herein, Plaintiffs' Motion for Temporary Restraining Order [Doc. 4] is **DENIED**.

**SO ORDERED:**

s/Clifton L. Corker
United States District Judge